Brannin vs. Womble, Sheriff, et al.

## No. 971.

ROBERT E. BRANNIN VS. J. W. WOMBLE, SHERIFF, ET AL.

In a suit against husband and wife, in which he takes an Appeal, whether he is acting for himself individually, or as head and chief of the Community, or as legal agent of his wife, he can stand alone in judgment and his wife is not a necessary party to the Appeal.

When, at the time a special mortgage was granted on an undivided portion of a plantation, the mortgagor only owned the undivided portion mortgaged, the subsequent acquisition by him of the rest of the undivided property, will not render the said property subject to the exemption of the Homestead.

| | |
|---|---|
| 32 | 805 |
| 110 | 304 |
| 110 | 305 |
| 32 | 805 |
| 115 | 989 |
| 32 | 805 |
| .116 | 57 |
| 32 | 805 |
| 124 | 54 |

APPEAL from the Twelfth Judicial District Court, parish of Franklin. *Smith*, J.

A. W. Moore for Plaintiff and Appellee.

Boatner & Liddell for Defendant and Appellant:

First—That the act of mortgage bearing upon an incorporeal—an undivided interest in a plantation—bore upon a class of property not falling within the terms of the Homestead Act, and hence not subject to its provisions.

Second—That any change in the disposition or nature of the property mortgaged is inoperative as to us, and that we have the legal right to enforce the contract according to its terms. 14 An. 47.

The value of the property sought to be exempted is far in excess of the limit fixed in the exemption law.

The opinion of the Court was delivered by BERMUDEZ, C. J.

### ON MOTION TO DISMISS.

Plaintiff moves to dismiss the appeal herein on the following grounds:

1st. The order of appeal is defective, in not stating in whose favor it is granted.

2d. The appeal-bond is signed by J. A. Morris, one of the defendants, and the name of Emily A. Morris, the other defendant, does not appear, either in the bond or in the order of appeal.

3d. The appeal-bond is not signed by Emily A. Morris, the other defendant, or any one representing her.

4th. As Emily A. Morris is not appellant, she is appellee, and, as such, has no interest in disturbing the judgment of the District Court.

5th. J. A. Morris can only prosecute the appeal, so far as his interest is involved, separate and disconnected from that of Emily A. Morris.

In order to test the strength of these objections, we are authorized to ascertain from the pleadings who are the parties to this litigation.

The petition avers that, under execution issued in the case of J. A. Morris and Emily A. Morris against R. E. Brannin, the sheriff has seized and is about to advertise and sell real estate which is the homestead of plaintiff; that an injunction is necessary to prevent such sale, and concludes by asking that relief, and that the sheriff and said parties be cited, and that finally the property be declared exempt as alleged.

The answer filed to this petition is made in the names of J. A. Morris and of Emily A. Morris, his wife. They aver how and why the property is not exempt, and pray that the injunction be dissolved.

The judgment perpetuates the injunction, and orders that " John A. Morris and his wife Emily A. Morris pay costs of suit and proceedings."

It is evident, therefore, that John A. Morris and Emily A. Morris are husband and wife, not separated in property, and that they are treated by Brannin as his judgment creditors.

Now, the amount for which judgment was rendered in their favor is due either to Morris individually, or to the community between them, or to Mrs. Morris. In either case, Morris had a right to stand in judgment alone, and his wife was an unnecessary party. The proposition is self-evident. C. P. 1; R. C. C. 2404 ; C. P. 107.

What then becomes of the objections upon which the motion to dismiss is founded ? At one breath they vanish into thin air.

I.   The motion is made in the name of defendants. This includes at least the real defendant. The appeal must always be considered to be granted to him who applies for it. It is not necessary that the name of the appellant should be mentioned in the order of appeal. If it were otherwise, the omission could not be attributable to the appellant, but to the Court, and the appellant could not be held responsible.

II.   The bond of appeal embodies the name of J. A. Morris. It was not necessary that it should contain any other.

III.   It is signed by J. A. Morris, the only real defendant. It is not required that it be signed even by him, still less by any other.

IV.   Whether Mrs. Morris be appellant or appellee, is immaterial, as she is not a necessary party.

V.   J. A. Morris claims, either for himself personally, for himself as head and master of the community, or for his wife as her legal agent. Morris having a standing in court to obtain judgment, has also a standing to remove impediments thrown in the way of recovery.

The motion is overruled.

## ON THE MERITS.

On the 1st of May, 1874, Brannin borrowed $6207 from J. A. Morris

and Emily A. Morris, and secured payment by mortgage on his undivided three fourths of certain lands. On May 31, 1876, the matured debt remaining unpaid, suit was instituted *via ordinaria* to recover its amount, with mortgage. Upon averments, the defendant claimed that the property, being his homestead, was exempt from seizure. Judgment was rendered on the 9th of June, 1877, recognizing the money demand and mortgage claimed, but pretermitting the homestead question. Execution having issued on the 21st of May, 1878, the sheriff, on the 27th of May following, levied it on the undivided share mortgaged. On the 17th of December, 1877, Brannin had purchased the remaining undivided fourth, until then belonging to others.

On the 17th of August following, Brannin brought the present proceedings, averring the issuance and levy of the writ on said undivided three fourths, his acquisition of the last fourth, prior to the seizure, and, making required averments, showing that the property *then* exclusively his, is exempt from seizure as his homestead, he prays for an injunction to arrest the sale of it and for a judgment declaring the property free from liability for debt.

The answer in the abstract is, substantially, that the undivided portion seized is not exempt ; that the *status* of such share at the date of the mortgage cannot be subsequently changed or affected by any act of the plaintiff, to the prejudice of the mortgage debt previously existing, without the participation of the creditor ; that the property claimed as exempt exceeds $2000 in value, the upper limit fixed by law ; that plaintiff is the owner of considerable movable property.

After trial of the issues presented, the property in question was declared to be the homestead of the plaintiff and so exempt from seizure, and the injunction issued was made perpetual, at defendants' costs.

The judgment thus rendered is now before us for review.

We consider the question to be : Has the undivided share which the plaintiff has hypothecated to secure the sum loaned him, and which was liable to seizure and sale at the time the contract was formed, ceased to be encumbered, and so responsible for the debt incurred, *because* the plaintiff has, since the mortgage was consented, acquired the remaining undivided portion belonging to others, thus becoming the sole owner of the whole property ?

We will not inquire into the motives which induced the Legislature to adopt the Homestead Act, upon which the plaintiff places his case. It is a law of relief, which exists in almost every State of the Union, to the enforcement of which the courts will lend their aid, but in proper cases only. The reasons which animated that body on the occasion were inpired by considerations of public policy. It is sufficient that the power to pass it existed, and that it was exercised.

In order to appreciate this case intelligently, it is highly useful to consider and bear in mind the circumstances of fact and of law under which the contract was entered into in *1874*.

The Homestead Act at that time had been in force since 1865. It had been interpreted by the highest judicial State authority, and the construction put upon it had become part of the contract. It is elementary that the laws and their exposition, in force at the date of the formation of covenants, are to be considered as having been kept in view, as an important, a vital ingredient, by the contracting parties.

In Todd vs. Gordy. 28 A. 668, dealing with a question of homestead, under the act of 1865, the Court said, alluding to the debtor: "His creditors contract with him with reference to the character, value, and condition of his residence and adjoining land."

It would be cumbersome to transcribe here the Homestead Act. R. S. 1691, 1692.

On the first of May, when the contract was formed, that act had received a judicial interpretation.

In conformity with the established principles regulating the effects of exemption laws and of all laws for the benefit of debtors to the injury of creditors, the Court held that the act in question, being in derogation of common right, should be strictly construed.

Guillory vs. Deville, 21 A. 686, decided in 1869. This ruling was subsequently affirmed in 28 A. 667, at least.

The question afterward arising, in a case in which an undivided share in real estate had been mortgaged, whether such portion was exempt from seizure, under the Homestead Act, the Court held that it could not be comprised within the compass of that law, and could be subjected to the debt.

This doctrine was first announced in Henderson vs. Hoy, 26 A. 156, was affirmed in 28 A. 355, 608, and is a rule of property.

The act under consideration might have been framed with more perspicuity, but its obscurity is not dangerous to those concerned, and does not prevent it from being well understood.

It was not every one who could claim the benefit of the law ; it was not every property that could be brought within its pale. The claimant was required to be the owner of the property, to occupy it as his residence, to derive support from it, to have person or persons dependent upon him for maintenance ; the property was not to exceed $2000 in value ; the claimant's wife was not to own or be in actual enjoyment of property, in her own right, exceeding in value $1000. Unless all these elements concurred, the claim for exemption was to be without foundation. As was well observed by the counsel of plaintiff in his learned brief : "When all these conditions and pre-requisites cumulate in one

person and show the existence of a state of facts contemplated by the legislature in the enactment of the exemption law, then, he can, with confidence, claim the benefit of the law."

Such was not the condition of things at the date of the contract under consideration.

The plaintiff was not in 1874 the sole owner of the property described in his petition. He owned three undivided fourths thereof, and mortgaged that share, which was then liable to seizure, for the debt. When the sum was borrowed, it is legitimate to suppose that the plaintiff induced the lender to part with his money on the representation that an undivided share in real estate had just been held by the highest judicial authority not susceptible of being claimed as exempt from seizure under the Homestead Act, and that, trusting and yielding to that consideration, the lender made the investment, deeming it safe and well protected.

There was then a contract legally formed, the specific performance of which was to be the re-imbursement of the money, by seizure and sale of that undivided and unprivileged share if necessary. Under this agreement, rights were created, acquired, and vested, and obligations were incurred ; R. C. C. 1757, 3278, 3282 ; obligations which no State, not even in convention assembled, could impair or divest in the least degree, without a flagrant violation of the paramount laws of the land, which no court could sanction.

How can it be, with the least plausibility, advanced, as a sound proposition of law, that the debtor could, by any subsequent act of his, affect obligations which the State itself, in the utmost exercise of its powers, could not validly alter to his advantage and to the injury of his creditors ?

How can it be pretended that the State has delegated to one of its citizens the right of derogating from the obligations of his contract, when the State itself was powerless to do so?

It can well be said, nevertheless, that when the parties contracted they did so subject to the contingency that might arise in the future, rendering it advantageous for the debtor to avail himself of the benefit of the homestead law. This theory was recognized in 26 A. 149, but with this remarkable difference, however, that the Court assumed to make it a *necessity* for the debtor to assert immunity under the act.

Where a party lends money to one who is the owner of rural property, taking a mortgage on the land, when the owner does not occupy the property as his residence, does not derive support from it, has no one dependent upon him for maintenance, and is unmarried, such lender makes the loan and accepts the mortgage subject to the contingencies that the debtor may bring the property within the meaning and purport

of the act, by occupying it as his residence, by deriving support from it, by having some one dependent on him for maintenance, by marrying a person destitute of means. He "takes his chances," as is said in common parlance.

It was from that stand-point that in Fuqua vs. Chaffe, 26 An. 148, so confidently relied upon by the plaintiff, the Court held that the property in that case could be exempted under the homestead law. It was not the residence of the debtor at the time the mortgage was placed upon it. It became so afterward, prior to seizure.

A similar consideration has influenced the Court in all the cases *in pari materiâ* in which widows, with and without minor issue, left in necessitous circumstances, claimed the one thousand dollars allowed by law to surviving consorts in penury.

In the Succession of Marc, 29 A. 415, which goes to the furthest limit, the Court held: That the surviving widow, although a former concubine, and only married a few days before her husband's death, is entitled to all the rights enjoyed by any other widow under the homestead law, and so would rank, and thus practically exclude altogether, in that insolvent estate, a mere mortgage creditor, however ancient, who had contracted with the mortgagor when he was a bachelor, and could not be, owing to his advanced age, suspected of bosoming the remotest aspiration after the felicity which usually proves consequent upon connubial life.

We are at a loss to perceive how the theory established in 26 A. 148 can be invoked as authority for the determination of the issue now before us. The disparity between the two cases is glaring. The fallacy consists in viewing them as being similar in all material elements.

In that case, when the mortgage was consented the debtor *was the sole owner* of the land upon which a claim of exemption, under the homestead law, was predicated. In the present instance, he was *not the sole owner* of the property upon which the claim is now sought to be located.

The debtor, in such a case as is now presented to us, had agreed to a mortgage which attached to a thing upon which a homestead claim could no more be made at the time than it could be asserted had he hypothecated a ship or other vessel, which is mortgageable under our system, according to the usages of commerce.

R. C. C. 3289, 3305.

In 6 La. 214, an undivided portion of real estate having been mortgaged and the property subsequently amicably partitioned, the Court properly held: That this could not affect the right of the mortgagee, who could proceed to enforce his claim, regardless of the partition. 14 A. 47. This doctrine was indorsed in 25 A. 397, and 31 A. 393. It

would seem to flow from this theory, that if the mortgagor cannot impair the rights of the mortgagee, even by compelling him to resort to a different remedy proceeding, he can still less destroy his claim to a mortgage by asserting rights to exemption under the homestead act arising from the subsequent acquisition of the undivided portion previously belonging to others.

The conventional mortgage on the undivided three fourths could not, under any circumstance, by its own force and virtue extend to the last fourth, when purchased; how could, then, this last fourth, when acquired, and because acquired and added to the three undivided fourths and forming a unit, annihilate the mortgage on those three undivided fourths?

Further discussion of the subject is unnecessary. Strictly, the mere statement of the proposition upon which this case is based carries its own refutation.

We, therefore, hold the negative of the question, and declare that the character or *status* of the undivided share mortgaged has not changed by the acquisition on the part of the plaintiff of the remaining fourth.

In ruling as we do, we have the satisfaction of feeling that we have based our judgment on the moral maxim of the law, that no one ought to enrich himself gratuitously at the expense of another. R. C. C. 1965.

The views which we have expressed dispense us from passing on the alternative defenses set up to the action.

We cannot dissolve the injunction with damages, as we do not think that this is a case in which any should be allowed. The plaintiff does not appear to have acted rashly. His views were indorsed by the lower court; interest accrues on the claim; under the mortgage-act the fees of the attorney employed to foreclose the mortgage are to be paid by the debtor; the costs of the litigation, from the beginning, will have to be borne by the plaintiff in this case, and will be onerous.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed; and, proceeding to render such judgment as should have been rendered,

It is ordered, adjudged, and decreed that the demand of plaintiff be rejected, with judgment in favor of defendants; that the injunction issued be dissolved; that the writ arrested be proceeded with, and that the three undivided fourths of the real estate described in the petition and act in the suit wherein execution issued, be seized and sold in satisfaction of the claim liquidated in said case, and that plaintiff in this case pay costs in both courts.

Messrs. Justices Todd and Levy dissent from this opinion and decree, on the merits, and reserve the right to give their reasons hereafter.